IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ARIANNE CRYSTAL BRAND, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) No. 4:24-cv-01386-JMD |
| LELAND DUDEK, Acting Commissioner of Social Security,[1] | ) ) ) |
| *Defendant*. | ) ) ) |

## MEMORANDUM AND ORDER

Plaintiff Arianne Crystal Brand requests judicial review of the Commissioner of Social Security's final decision denying her application for child's disability insurance benefits and supplemental social security income under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). But the Commissioner's determinations as to (1) the treatment of the consultative examiner's opinion, (2) the residual functional capacity finding, and (3) the incorporation of Brand's mental limitations are supported by substantial evidence. Under Eighth Circuit precedent, federal court review of the Commissioner's decision is very limited and highly deferential. The Court has no legal basis to upend the Commissioner's decision and thus **AFFIRMS** that decision.

---

[1] The Court substitutes newly confirmed Commissioner of Social Security Frank Bisignano for former Acting Commissioner Dudek where necessary. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security . . . .").

1

## Background

### A. Procedural History

Brand filed an application for child's insurance benefits and supplemental security income in December 2020.  ECF 13 at 1.  The Social Security Administration denied her claim and did so again upon application for reconsideration.  *Id.*  Following a June 2023 hearing, Administrative Law Judge Jan Dutton again denied her claim, determining that Brand was not eligible to receive these benefits.  ECF 10-3 at 27.  The agency's appeals board then affirmed the administrative law judge's determination in August 2024.  ECF 13 at 3.  The administrative law judge's decision is the Commissioner's final decision for purposes of judicial review.[2]  ECF 13 at 3; *see* 20 C.F.R. §§ 404.900(a)(5); 416.1400(a)(5).

### B. Regulatory Background

To receive benefits under the Act, a potential claimant must prove a disability.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  That is a high standard.  A person is disabled if he is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (emphasis added).  The impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in *any* other kind of substantial gainful work which exists in the national economy."  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B) (emphasis added).

---

[2] Because the administrative law judge's decision stands as the Commissioner's final decision, the Court will primarily refer to the Commissioner's—not the administrative law judge's—actions.

2

To determine whether a claimant is disabled, the Commissioner employs a "five-step sequential evaluation process." 20 C.F.R. §§ 404.1520(a)(1); 416.920(a)(1). If the claimant is deemed not disabled in either of the first two steps, the evaluation ends in a failed claim. For the third step, if the claimant does not have an impairment (or combination of impairments) that matches one (or any combination) listed under the regulations, the analysis continues to the last two steps. In turn, if the claimant is determined to be able to work under steps four or five, the request for benefits similarly fails.

Steps one through three examine the claimant's current work activity and impairments. First, the Commissioner considers whether the claimant is "working." *Id.* §§ 404.1520(b), (a)(4)(i); 416.920(b), (a)(4)(i). If the claimant is engaged in "substantial gainful activity," the claimant is not disabled. *Id.* Second, the Commissioner determines whether the claimant has a severe "impairment" that "significantly limits [his] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), (a)(4)(ii); 416.920(c), (a)(4)(ii). If no impairment exists, the claimant is not disabled. *Id.* Third, if the claimant has an impairment, the Commissioner considers its medical severity. If the impairment "meets or equals" one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled. *Id.* §§ 404.1520(d), (a)(4)(iii); 416.920(d), (a)(4)(iii). If not, the analysis proceeds to the next step.

As part of his analysis, the Commissioner must assess the claimant's "residual functional capacity." *Id.* §§ 404.1520(e), (a)(4)(iv); 416.920(e), (a)(4)(iv). Residual functional capacity represents "the most a claimant can still do despite [his or her] physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal citation omitted). It is an "administrative assessment" based on "all relevant evidence," including "medical records, observations of treating physicians and others, and an individual's own description

of his limitations."[3] *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (internal citation omitted). "Accordingly, it is the responsibility of the [Commissioner], not a physician, to determine a claimant's [residual functional capacity]."[4] *Id.*

Steps four and five examine the claimant's ability to work. For step four, the Commissioner assesses the claimant's "residual functional capacity and [the person's] past relevant work." 20 C.F.R. §§ 404.1520(e)–(f), (a)(4)(iv); 416.920(e)–(f), (a)(4)(iv). If the claimant has the residual functional capacity to "still do [his] past relevant work," he is not disabled. *Id.* In the final step, the Commissioner considers the claimant's residual functional capacity as well as the person's "age, education, and work experience" to see if the claimant "can make an adjustment to other work."[5] *Id.* §§ 404.1520(g), (a)(4)(v); 416.920(g), (a)(4)(v). If the claimant can make an adjustment to "other work" that "exist[s] in significant numbers in the national economy," the Commissioner finds the claimant not disabled. *Id.* §§ 404.1560(c)(1); 416.960(c)(1). If not, the claimant is deemed disabled. *Id.* §§ 404.1520(g), (a)(4)(v); 416.920(g), (a)(4)(v).

### C. The Commissioner's Final Decision

Because the Commissioner did not supplant the administrative law judge's determination, that determination operates as the Commissioner's final decision. ECF 13 at 3; *see* 20 C.F.R. §§ 404.900(a)(5); 416.1400(a)(5). Applying the five-step sequential evaluation

---

[3] The claimant is responsible for providing evidence related to his residual functional capacity, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his] own medical sources." 20 C.F.R. § 416.945(a)(3).

[4] For this reason, "there is no requirement that [a residual functional capacity] finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

[5] Though the burden of production shifts to the Commissioner at this step, the burden of persuasion to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932 (8th Cir. 2016).

4

process, the Commissioner deemed Brand "not disabled" and concluded that she did not qualify for the requested child's insurance benefits or supplemental security income. ECF 10-3 at 27. After finding at step one that Brand had "not engaged in substantial gainful activity," the Commissioner determined at step two that she had "the following severe impairments: diabetes type II with polyneuropathy, obesity, asthma, anxiety, and schizoaffective disorder, depression." *Id.* at 20. He further held for step three that the claimant did "not have an impairment or combination of impairments" listed in or medically equal to one contained in the regulations. *Id.*

Following step three, the Commissioner found that Brand has the residual functional capacity to "perform light work" subject to certain limitations. ECF 10-3 at 22. Critically, he held that the claimant is "limited" to "simple routine tasks" and to "no more than occasional interaction with co-workers, supervisors or the public." *Id.* He also noted that the claimant "can do all postural activities occasionally—climb, balance, stoop, kneel, crouch or crawl." *Id.* Reviewing the "totality of medical evidence," among other things, the Commissioner determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23, 26.

In the last two steps, the Commissioner decided that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" even though Brand "has no past relevant work." *Id.* at 26. He relied on a vocational expert who testified that Brand "would be able to perform the requirements of [several] representative occupations." *Id.* at 27. Because he determined that Brand "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the Commissioner deemed Brand "not disabled" under the Act. *Id.* In other words, Brand had

5

not proven that she is "unable to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A) (emphasis added).

### III. Standard of Review

Article III courts have very narrow authority to review the decision of the Commissioner to grant or deny public benefits. "Congress may allow the Executive Branch to resolve certain matters free from judicial involvement"—perhaps at all. *SEC v. Jarkesy*, 603 U.S. 109, 152 (2024) (Gorsuch, J., concurring). These "matters" include the "grant [or denial] of public benefits." *Id.* at 152–53. In this area, Congress has chosen to give federal courts some (limited) authority to review the decision of the agency, but courts must remain cognizant of this highly limited role.

Congress has given federal courts authority to review only select matters in this area. First, courts can review whether the Commissioner's fact findings are "supported by substantial evidence. 42 U.S.C. § 405(g). If the findings are supported, then the Commissioner's findings "shall be conclusive." *Id*. Second, if the Commissioner rules against a petitioner because that petitioner fails to comply with an agency regulation, "the court shall review only the question of conformity with such regulations and the validity of such regulations." *Id*. Third, courts may (in certain circumstances) "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id*.

### Analysis

Brand asserts that the Commissioner's decision was not supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal

6

citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* It is simply "more than a mere scintilla"—evidence sufficient that a "reasonable mind might accept as adequate to support a conclusion." *Id.* The Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). Courts "defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (internal citation omitted). The Court does not "reweigh the evidence presented to the ALJ." *Reece*, 834 F.3d at 908 (internal citation omitted). The Court will not "reverse merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (internal citation omitted); *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Under this highly deferential standard, the Commissioner prevails. Brand urges the Court to upend the Commissioner's final decision because she believes the administrative law judge (1) "failed to properly evaluate the opinion of the consultative examiner," (2) "crafted" a residual functional capacity "made up out of whole cloth," and (3) "failed to incorporate [her] moderate mental limitations." ECF 13 at 3, 8, 11. But substantial evidence supports the Commissioner's determination on all points. While judicial review is "more than a rubber stamp," the Court "must uphold" the Commissioner's decision "if it is supported by substantial evidence on the administrative record as a whole." *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir. 1983); *Hensley*, 829 F.3d at 931 (internal citation omitted). The Commissioner met this standard, so Brand's claims fail.

7

## A. Examiner's Opinion

Brand first argues that the Commissioner committed a "legal error" in rejecting the opinion of Dr. Amin, a consultative examiner, as "unpersuasive" and "inconsistent with" the record evidence. ECF 13 at 4, 6. That argument fails for several reasons.

To begin, the Commissioner is by no means required to defer to the judgment of a single physician. The Constitution and the laws of the United States do not outsource legal decision making to doctors. *See United States v. Skrmetti*, 145 S. Ct. 1816, 1836 (2025); *Brandt ex rel. Brant v. Griffin*, 147 F.4th 867, 887 (8th Cir. 2025) (en banc). That "would reduce judges," including administrative law judges, "to mere spectators" in our legal system. *Skrmetti*, 145 S. Ct. at 1840 (Thomas, J., concurring) (internal citation omitted). Agency regulations highlight that the Commissioner "will not defer . . . to any medical opinion(s) . . ., including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). That does not mean, of course, that a medical professional's opinion is unhelpful or irrelevant—just that the legal fact finder is not bound by it. "The more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s)" and "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim," "the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2) (outlining the supportability and consistency factors).

The Commissioner found the examiner's opinion unpersuasive for several reasons, none of which the Court can disrupt. First, the opinion was "inconsistent with" other medical records. ECF 10-3 at 24. The Commissioner added that, contrary to the examiner's view that Brand has "delusions" and "grossly disorganized behavior," the evidence revealed "generally normal mental status exams, including intact attention, concentration, and memory." *Id.* "[T]he Commissioner may discount or even disregard the opinion of a treating

8

physician where other medical assessments are supported by better or more thorough medical evidence." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (internal citation omitted). Just so here. Having "fully considered the medical opinions and prior administrative medical findings," the Commissioner properly concluded that the opinion was inconsistent with "the totality of medical evidence." ECF 10-3 at 24, 26.

Second, the Commissioner determined that the examiner's opinion not only contradicted the evidence from other medical practitioners, but also contradicted other evidence. He found that the weight of the record suggested that Brand (though undoubtedly dealing with serious health issues) improves with medication compliance and engages in a range of ordinary daily activities. In particular, he held that "the claimant's intact activities of daily living"—such as "babysit[ting] her sister's child," living alone, and having "no issues taking care of her daily needs"—undermined the examiner's conclusions. *Id.* at 24–25. So too did record evidence "identif[ying] the claimant's medication effectiveness." *Id.* at 24.

The Court cannot say the Commissioner lacked sufficient basis to deem the examiner's opinion unpersuasive after weighing it against medical evidence and related facts in the record. ECF 10-3 at 24. Contrary to Brand's argument, the Commissioner did not commit legal error. Substantial evidence supports his final decision.

### B. Residual Functional Capacity Determination

Brand next contends that the assessment of her residual functional capacity—absent further development of the record—is not supported by substantial evidence. ECF 13 at 8–11. But the Commissioner "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." ECF 10-3 at 22.

The Commissioner methodically evaluated the evidence, including medical evidence, about Brand's medical impairments. He reviewed (1) Brand's testimony and allegations; (2)

9

longitudinal medical treatment including objective examination findings and observations that were inconsistent with disabling symptoms and limitations; (3) the nature, compliance, and consistency of Brand's treatment; (4) the effectiveness of Brand's treatment and medication; and (5) Brand's activities of daily living that were inconsistent with her alleged symptoms and limitations. *See*, *e.g.*, ECF 10-3 at 22–24.

Brand argues that the Commissioner was required, but failed, to consider evidence from a medical professional supporting the Commissioner's decision. But the Eighth Circuit has repeatedly held that a residual functional capacity determination does not need to be supported "by a specific medical opinion," but only "by some medical evidence of the claimant's ability to function in the workplace." *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (quoting *Hensley*, 829 F.3d at 932); *see also Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("[The claimant's] activities—caring for her young son, preparing his meals, doing housework, shopping for groceries, handling money, watching television, and driving a car when necessary, among other things—showed that she could work."). Medical evidence encompasses more than just medical opinions. It also includes, among other things, "the medical records, observations of treating physicians and others, and an individual's own description of her limitations." *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) (cleaned up). The Commissioner considered medical opinions as well as many other things, like Brand's own testimony and evidence establishing that Brand's treatment and medications have been effective. Where, as here, the Commissioner examines a range of relevant evidence, "there [is] substantial medical evidence to support" his residual functional capacity determination. *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016).

The Court similarly cannot require the Commissioner to rely or fully rely on any particular medical opinion. The "governing principle" in "evaluating a claimant's [residual functional capacity]" is that an administrative law judge "is not limited to considering

10

medical evidence exclusively." *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The Eighth Circuit has even affirmed agency decisions that were made without any medical opinion evidence. *See, e.g.*, *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the Commissioner's decision where the claimant admitted that the "medical evidence" was "silent" regarding her "work-related restrictions"); *Stringer v. Berryhill*, 700 Fed. App'x. 566, 567 (8th Cir. 2017) (upholding the Commissioner's decision even though "there were no medical opinions").

The Court will also not require the Commissioner to supplement the record. Brand argues that the administrative law judge failed to properly develop the record in crafting the residual functional capacity. ECF 13 at 11. But the Commissioner "is not required to seek additional clarifying medical evidence unless a crucial issue is undeveloped." *Steed*, 524 F.3d at 876 (discussing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). So long as the Commissioner does "not find the doctors' records inadequate, unclear, or incomplete, nor . . . find the doctors used unacceptable clinical and laboratory techniques," he "may discount an opinion without seeking clarification." *Goff*, 421 F.3d at 791. Here, as in *Goff*, the Commissioner permissibly "discounted the opinions because they were inconsistent with other substantial evidence." *Id.* The Commissioner did not err in refusing to reopen the record.

While the Commissioner is not "magically endow[ed]" with "the knowledge necessary to determine the functional impacts" of Brand's impairments, ECF 16 at 3, he carefully discussed the medical and related record evidence in her case. Because he reached a determination adequately supported by this evidence, the Court will neither reweigh the evidence in the record nor upend his final decision. The Commissioner also had no obligation to supplement the record. The Court finds that the Commissioner's conclusions rested within

11

his reasonable "zone of choice." *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024); *cf. Garland v. Dai*, 593 U.S. 357, 366 (2021) ("It does not matter whether the agency accepts all, none, or some of the [claimant's] testimony; its reasonable findings may not be disturbed.").

### C. Incorporation of Alleged Mental Limitations

Brand criticizes the Commissioner for not explaining "why [the] step two finding of moderate mental limitations were not incorporated into [the residual functional capacity] determination." ECF 13 at 12. But the Commissioner did account for these limitations. He included "specific work-related limitations that flowed from [Brand's] degree of mental impairment" into her residual functional capacity. ECF 15 at 11. As in this case, "a limitation to simple routine repetitive work sufficiently accounts for deficiencies in persistence, concentration, or pace." *Morand v. Berryhill*, No. 4:16-cv-01295-DGK-SSA, 2018 WL 1333978, at *3 (W.D. Mo. Mar. 15, 2018) (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 1997)) (cleaned up). Brand is also unable to counter the Commissioner's findings that "medical evidence revealed generally normal mental status exams" and that her "medication was effective in controlling her symptoms." ECF 15 at 11. Given the adequacy of these findings and the sufficiency of the record, Brand's related claim that the Commissioner should have asked additional questions on this subject to the vocational expert lacks force. ECF 13 at 13. The Commissioner's residual functional capacity findings stand.

### V. Conclusion

Based on a fully and fairly developed record, and applying the highly deferential standard that Congress has created, the Court finds that the Commissioner (1) sufficiently considered the consultative examiner's opinion, (2) made a proper residual functional capacity determination, and (3) incorporated Brand's moderate mental limitations in the analysis. The Commissioner's final decision is supported by substantial evidence.

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 31st day of October, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE